United States District Court
Middle District of Florida
Jacksonville Division

**LINDA MATTHEWS,**

    *Plaintiff,*

v.                                                                                                      NO. 3:16-CV-210-J-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

## Order Affirming Commissioner's Decision

    This is a case under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of the Social Security Administration ("SSA") denying Linda Matthews's claims for disability-insurance benefits and supplemental security income.[1] She seeks reversal, Doc. 13; the Commissioner, affirmance, Doc. 18. This order adopts the summaries of facts and law in the Administrative Law Judge's ("ALJ's") decision, Tr. 19–36, and in the parties' briefs, Docs. 13, 18.

---

[1]The SSA uses an administrative review process a claimant ordinarily must follow to receive benefits or judicial review of her denial. *Bowen v. City of New York*, 476 U.S. 467, 471−72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. §§ 404.900−404.906, 416.1400–416.1406. If the claimant is dissatisfied with the initial determination, she may ask for reconsideration. 20 C.F.R. §§ 404.907−404.918, 416.1407−416.1422. If she is dissatisfied with the reconsideration determination, she may ask for a hearing before an Administrative Law Judge ("ALJ"). 20 C.F.R. §§ 404.929−404.943, 416.1429–416.1443. If she is dissatisfied with the ALJ's decision, she may ask for review by the Appeals Council. 20 C.F.R. §§ 404.967−404.982, 416.1467−416.1482. If the Appeals Council denies review, she may file an action in federal district court. 20 C.F.R. §§ 404.981, 416.1481. Sections 405(g) and 1383(c)(3) provide the bases for the court's jurisdiction.

**Issue**

Matthews presents one issue: whether the ALJ properly evaluated the opinions of Drs. Jessica Anderton and Richard Nay concerning functional limitations arising from her mental impairments. Doc. 13 at 9–16.

**Background**

Matthews is 49 and last worked in January 2010. Tr. 230, 286. She has an eighth-grade education and experience as a cashier and driver. Tr. 287–88. She alleges she became disabled in January 2010 from spine deterioration, pinched nerves and herniated discs in her back, depression, and anxiety. Tr. 76, 286. Her date last insured for disability-insurance benefits is June 30, 2015. Tr. 21. The SSA denied her claims initially and on reconsideration. Tr. 97–100, 129–36, 148–53. In March 2012, the ALJ issued a decision finding her not disabled. Tr. 104–18. The Appeals Council vacated the decision and remanded the case for the ALJ to adequately consider Dr. Nay's opinion and address her obesity. Tr. 126–27. The ALJ issued a new decision in April 2014 again finding her not disabled. Tr. 19–37. The Appeals Council denied review. Tr. 1–6. This case followed. Doc. 1.

**Opinion Evidence**

On June 8, 2010, Dr. Anderton conducted a consultative mental examination. Tr. 579–83. She observed Matthews was cooperative, but her "overall manner of relating was poor because of emotionality." Tr. 581. Matthews was lethargic and had poor eye contact. Tr. 581. There was no evidence of hallucinations, but she was "[d]istinctly depressed and tearful much of the time" and had a dysthymic mood. Tr. 581. She had impaired attention and concentration. Tr. 582. Her recent and remote memory skills were mildly impaired. Tr. 582. Her insight and judgment were good. Tr. 582. Dr. Anderton opined:

> Vocationally, the claimant[']s ability to follow and understand simple instructions appears generally intact. Her ability to perform simple or

>complex tasks independently is impaired by a combination of psychiatric and physical problems. She cannot maintain adequate attention and concentration at this point. Her ability to maintain a regular schedule is impaired. Her ability to learn new tasks is impaired. The claimant's ability to make appropriate decisions is impaired by psychiatric problems. Her ability to relate adequately with others is impaired. Her ability to appropriately deal with stress is also impaired.

Tr. 582–83. She diagnosed Matthews with severe major depressive disorder with psychotic features and post-traumatic stress disorder. Tr. 583. She opined Matthews's prognosis was "fair to guarded." Tr. 583. She observed Matthews had described significant impairments, but her history was "positive for stable functioning." Tr. 583. She expressed hope that Matthews could relieve symptoms and improve functioning with intervention and support. Tr. 583.

On April 4, 2011, Dr. Nay conducted a consultative psychological evaluation of Matthews. Tr. 796–801. He observed she had slowed speech and was lethargic, and she said she had just taken a dose of Lortab. Tr. 796. As a result, she had "a blunted affect, dysthymic mood, and was apt to lose her train of thought at times." Tr. 796. She fell asleep three times during the evaluation. Tr. 796.

Matthews described "a very high level of depression" and reported "impaired concentration, psychomotor retardation, crying spells, low self-esteem, anhedonia, hopelessness, and feelings of excessive anger at times." Tr. 797. Dr. Nay found it significant that she had reported her niece had died the previous day. Tr. 797. She reported hearing external voices that were very critical and sometimes told her to kill herself. Tr. 797. She reported current suicidal thoughts, beginning about a month before the evaluation when she learned her niece's health had been deteriorating rapidly. Tr. 798.

Dr. Nay found Matthews had mild to moderate short-term memory problems and attention and concentration deficits. Tr. 800. He opined:

> Because of her heightened ongoing level of depression and anxiety at present, as well as her obvious physical limitations and ongoing pain behaviors, it is felt that Ms. Matthews is completely disabled from a psychological perspective from any job at the time of this evaluation. Specifically, it is felt that these impairments would prevent Ms. Matthews from performing any work on an 8-hour per day, five day per week basis. Because of her difficulties with attention, concentration, and focus, as well as her obvious difficulty completing even basic arithmetic questions …, it is felt that Ms. Matthews cannot adequately manage her own benefits at this time.

Tr. 800–01. He diagnosed her with severe recurrent major depression with psychotic features, pain disorder, and anxiety disorder. Tr. 801.

On April 13, 2011, Dr. Nay completed a mental residual functional capacity ("RFC") questionnaire. Tr. 792–94 He opined Matthews would have noticeable difficulty no more than 10 percent of the work day or work week in remembering work-like procedures; carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; asking simple questions or requesting assistance; being aware of normal hazards and taking appropriate precautions; and adhering to basic standards of neatness and cleanliness. Tr. 793–94.

Dr. Nay opined Matthews would have noticeable difficulty from 11 to 20 percent of the work day or work week in understanding and remembering very short and simple instructions; working in coordination with or in proximity to others without being unduly distracted; making simple work-related decisions; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; setting realistic goals or making plans independently of others; interacting appropriately with the general public; maintaining socially appropriate behavior; traveling in unfamiliar places; and using public transportation. Tr. 793–94.

Dr. Nay opined Matthews would have noticeable difficulty more than 20 percent of the work day or work week in maintaining attention for two-hour

segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; completing a normal work day and work week without interruptions from psychologically based symptoms; dealing with normal work stress; and understanding and remembering detailed instructions. Tr. 793–94.

Dr. Nay opined Matthews would be unable to regularly and reliably perform at a consistent pace without an unreasonable number and length of rest periods; carry out detailed instructions; and deal with the stress of semiskilled and skilled work. Tr. 793–94. He also opined she would "need too frequent/constant breaks or rest periods, [have] difficulties with sustained focus [and] concentration, [and have] intermittent tearfulness and panic symptoms in response to stress." Tr. 794.

### Hearing Testimony[2]

At a December 2011 hearing, Matthews testified as follows. She spends a lot of time crying, and it has worsened since she stopped working and cannot take care of herself. Tr. 80. She always has a feeling "like somebody talking about me or somebody has something bad to say about me" any time she notices anyone whispering. Tr. 80–81. Her preoccupation with those thoughts prevented her from paying full attention to her job. Tr. 81. She is not interested in anything. Tr. 80.

Matthews takes Abilify and Citalopram for depression and anxiety, and they sometimes help alleviate symptoms. Tr. 82. "Almost all" of her medications cause dizziness and nausea. Tr. 82. Her therapist told her to try to do "a little at a time" because her inability to do things independently contributes to depression. Tr. 84–85.

At an October 2013 hearing, Matthews testified as follows. She has difficulty concentrating and remembering things, such as when to take medication, when she

---

[2]Because Matthews challenges only the ALJ's evaluation of medical opinions concerning her mental impairments, only her testimony relating to those impairments is included here.

5

has doctor's appointments, how old she is, and what day of the week it is. Tr. 53. She needs to set an alarm to remind her when to take medication, and her girlfriend keeps track of her doctor's appointments. Tr. 53.

Matthews's providers "just want to give [her] a pill" for any symptom she reports. Tr. 53. She gets tired of taking her medication sometimes and then becomes depressed and suicidal, so her daughter and girlfriend take her medication away from her and give them to her as she needs them. Tr. 54.

Matthews believes her depression largely stems from the fact that her "life that [she was] used to living was snatched from [her]" when her back problems worsened in January 2010. Tr. 54. She cries all the time because she is upset she cannot take care of herself and has to depend on others. Tr. 55.

### ALJ's Decision

At step one,[3] the ALJ found Matthews has not engaged in substantial gainful activity since January 2010. Tr. 21.

At step two, the ALJ found Matthews suffers from severe impairments of disorder of the spine, diabetes mellitus, obesity, affective disorders, and anxiety-related disorders. Tr. 21.

---

[3]The SSA uses a five-step sequential process to decide if a person is disabled, asking whether (1) she is engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) she can perform any of her past relevant work given her RFC, and (5) there are a significant number of jobs in the national economy she can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step three, the ALJ found Matthews has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 22–23.

The ALJ considered the "paragraph B" criteria[4] to determine if Matthews's mental impairments meet or equal the criteria of a listing. Tr. 22–23. She specifically discussed listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). Tr. 22. She found Matthews has a mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties maintaining concentration, persistence, and pace; and no episodes of decompensation of extended duration. Tr. 22–23. She also considered the "paragraph C" criteria[5] and found Matthews does not meet them. Tr. 23.

After stating she had considered the entire record, the ALJ found Matthews has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with additional limitations:

> A need for [a] hand-held assistive device for standing/walking; no more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, [or] crawling; no climbing of ladders, ropes[,] or scaffolds; no concentrated exposure to hazards (machinery, heights, etc.)[; and] no more than simple routine, repetitive tasks with no more than occasional interaction with supervisors, coworkers[,] and the general public.

---

[4]To evaluate a mental impairment, an ALJ must evaluate the paragraph B criteria (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation) and the extent of any limitation in the first three areas (none, mild, moderate, marked, or severe). 20 C.F.R. § 404.1520a(a) & (c). An ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(4). "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(4).

[5]Paragraph C criteria are "additional functional criteria" in listings 12.02, 12.03, 12.04, and 12.06, which the SSA assesses "only if [it finds] that the paragraph B criteria are not satisfied." 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00A (eff. Feb. 26, 2014).

7

Tr. 23–24. In making that finding, the ALJ gave "no significant weight" to the opinions of Drs. Anderton and Nay. She stated:

> Each … of these providers performed only a one-time evaluation of the claimant with no evidence of any medical treatment or follow[-]up care or evaluation. Their conclusions are not well-supported by the overall medical evidence of the treating providers, mental health providers[,] and treatment notes that reflect minimal symptoms (mild to moderate symptoms despite only partial compliance with treatment as noted in Exhibit 28F/1). Moreover, her mental status exams described her as friendly, sociable[,] and overall failed to document barriers to employment as a result of her mental health issues. (Exhibits 28F/3, 30F/2). Even if I were to fully credit the opinions of these two sources, the remaining medical record does not establish that these limitations persisted for any consecutive twelve[-]month period.

Tr. 34.

At steps four and five, the ALJ found Matthews could not perform past relevant work but could perform jobs a vocational expert had identified (addresser, ink printer, and surveillance-system monitor) and those jobs exist in significant numbers in the national economy. Tr. 34–36. She thus found no disability. Tr. 36.

## Standard of Review

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.*

Analysis

Matthews first argues the ALJ failed to state with particularity the weight she was giving Drs. Anderton's and Nay's opinions because "[s]tating what weight these medical opinions were not entitled to is different than stating with particularity the weight actually given." Doc. 13 at 9–10 (emphasis in original). The Commissioner does not respond to that argument. *See generally* Doc. 18.

An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of a claim is rational and supported by substantial evidence." *Id.*

The ALJ adequately stated the weight she was giving the medical opinions. Although not a model of clarity, her statement that she gave "no significant weight" to the opinions is sufficient when considered in the context of the overall decision. The statement necessarily means the ALJ neither fully rejected nor fully accepted the opinions. Reading the decision in its entirety, it is apparent that the ALJ accepted the opinions to the extent they supported mild to moderate limitations in attention, concentration, and social functioning but rejected them to the extent they reflected more severe limitations. Remand based on the ALJ's asserted failure to adequately state the weight she gave to Drs. Anderton's and Nay's opinions is unwarranted.

Matthews also argues substantial evidence does not support the ALJ's reasons for giving "no significant weight" to Drs. Anderton's and Nay's opinions. Doc. 13 at 10–16. She argues the ALJ ignored or "purposely failed to set out" the findings from Drs. Anderton's and Nay's mental-status examinations and other testing that supported their opinions; the ALJ improperly relied on the fact that both doctors had evaluated her only once; and "the record overwhelmingly contradicts" the ALJ's

finding that the overall record reflects only minimal symptoms and normal mental-status examinations. Doc. 13 at 10–16.

The Commissioner responds the ALJ properly discounted the opinions as "excessive and … inconsistent with the objective evidence from [Matthews]'s treating sources." Doc. 18 at 7. She argues some providers noted "frequent non-compliance with treatment"; records show Matthews was "much improved" by August 2012; she had "adequate focus and attention; and she had "reasonably experienced situational issues with the death of her niece and the incarceration of her children[,] and she sought counseling." Doc. 18 at 7–8. The Commissioner argues the ALJ properly gave more weight to nonexamining consultant Dr. Elizabeth Michalec, properly evaluated Matthews's RFC, and posed a complete hypothetical question to the vocational expert. Doc. 18 at 8.

The SSA will consider many factors to decide the weight to give a medical opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factor. 20 C.F.R. §§ 404.1527(c), 416.927(c). The Eleventh Circuit has emphasized, "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

The ALJ gave less weight to Drs. Anderton's and Nay's opinions because (1) they examined Matthews only once and (2) their opinions were inconsistent with evidence from treating providers reflecting (a) mild to moderate symptoms despite only partial compliance with prescribed treatment and (b) mental-status examinations frequently describing her as friendly and sociable and failing to document "barriers to employment." Tr. 34. She also concluded that, even if she fully credited the opinions, they would not establish disabling limitations for a consecutive

10

12-month period. Tr. 34. Those reasons amount to good cause, and substantial evidence supports them.[6]

Matthews does not dispute Drs. Anderton and Nay examined her only once; instead, she argues that reason is insufficient to give their opinions less weight because they were the only doctors who actually examined her, and the ALJ gave greater weight to a nonexamining state-agency psychological consultant. Doc. 13 at 12. The ALJ properly relied on the absence of a treating relationship. The regulations identify the existence or absence of a treating relationship as one of several factors the SSA will consider in weighing opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Matthews fails to recognize that the ALJ found that factor significant because evidence from her treating providers does not support Drs. Anderton's and Nay's opinions. Likewise, the ALJ gave more weight to Dr. Michalec's opinions to the extent they were consistent with the record but rejected them to the extent the record supported greater limitations in social functioning than she had found. *See* Tr. 34.

Substantial evidence supports the ALJ's finding that Drs. Anderton's and Nay's opinions were inconsistent with evidence from treating providers. She discussed treatment notes from January 2010 through April 2013 that frequently reflected no more than mild or moderate symptoms. Tr. 25–31. In mid-January 2010, Matthews was "very pleasant," did not complain of anxiety, depression, or hallucinations, was alert and oriented, and had a normal mood and affect. Tr. 25 (citing Tr. 486–87). In January and February 2010, she received treatment for anxiety and depression, but the attending physician declined to prescribe Valium despite Matthews's request. Tr. 25 (citing Tr. 568–69). On August 24, 2010, she was hospitalized under the Baker Act because she had reported suicidal thoughts, hallucinations, and severe depression stemming from her unemployment, financial

---

[6]To the extent Matthews asserts the ALJ failed to set out the opinions of Drs. Anderton and Nay at all, that assertion is inaccurate. The ALJ summarized both earlier in the decision. *See* Tr. 25, 28. That she did not repeat those findings in evaluating the opinions later in the decision does not warrant reversal and remand; doing so was unnecessary.

11

problems, and chronic pain. Tr. 26 (citing Tr. 620–21). She was discharged three days later, and the physician noted she had begun a new combination of medications with good results; she had responded to treatment adequately; she had no suicidal or homicidal thoughts; she no longer heard voices; she had good eye contact; and she was pleasant, polite, friendly, and smiling. Tr. 26 (citing Tr. 669–70). On December 3, 2010, she was observed to be in a good mood. Tr. 27 (citing Tr. 880). On December 12, 2010, she had adequate grooming and hygiene, good eye contact, responded favorably to treatment, and was directed to continue with counseling. Tr. 27 (citing Tr. 766).[7]

In April 2011, she reported she was not taking Trazodone, but the findings on examination were relatively unremarkable. Tr. 28 (citing Tr. 807–08).[8] On April 25, 2011, she attended grief counseling and responded favorably. Tr. 28 (citing Tr. 805). In May 2011, she did not want to talk because she was angry her disability claims had been denied; she reported her mood changed when she cared for her grandchild; and she needed counseling to stay positive. Tr. 28–29 (citing Tr. 804). In September 2011, she was smiling, pleasant, and cooperative; she described her mood as numb, but she was "quite friendly and sociable"; her psychotic features were "very, very, very minimal" (consisting of occasionally seeing a dark object on the floor); and she was no longer in therapy because she had been "discharged secondary to meeting her

---

[7]The ALJ did not mention other statements in this treatment note, including Matthews's depressed mood and congruent affect, tearfulness, feelings of anger, uselessness, and worthlessness, suicidal thoughts but no plan, and fair to poor level of functioning. Tr. 766. Her failure to mention them does not change that substantial evidence supports her conclusions.

[8]The treatment note reflects Matthews reported auditory hallucinations had recently returned following her niece's death; she had been isolating herself; she was alert and oriented and had adequate grooming and hygiene; she smiled sadly at times; she had no suicidal, homicidal, or delusional thoughts; she was sad and grieving and had a congruent affect; she had adequate insight, judgment, focus, and attention; and she was assessed as having had a "slight setback" after her niece's death. Tr. 807–08.

therapeutic goals." Tr. 29–30 (citing Tr. 964). In November 2011, she had mild to moderate depression symptoms despite only partial compliance with treatment. Tr. 30 (citing Tr. 962). In December 2011, she reported she was crying less and had been attending church. Tr. 30 (citing Tr. 1096).

In April 2013, Matthews reported feeling good, her symptoms had improved, her relationship with her partner had improved, she reported restful sleep and independent activities of daily living, she was engaged and cooperative, and she had a euthymic mood, bright affect, and positive attitude. Tr. 31 (citing Tr. 1066).

Those records and others support the ALJ's finding that the treatment records as a whole showed Matthews experienced no more than mild to moderate symptoms from her mental impairments, often presented as friendly and sociable during appointments, and did not have additional mental functional limitations—or, at least, did not have additional limitations lasting for a consecutive 12-month period. Viewed as a whole, those records show Matthews experienced an initial sudden onset of fairly serious depression and anxiety at some point in mid-2010, reaching its worst level in August 2010 when she was hospitalized. Thereafter, she improved consistently while compliant with treatment except when she experienced specific traumatic events (the death of her niece, Tr. 797, 807–08, and the long-term incarceration of both of her adult children, Tr. 1072, 1074).

Matthews argues the ALJ ignored the symptoms and examination findings in the reports by Drs. Anderton and Nay in finding the evidence showed only mild symptoms and did not "document barriers to employment." Doc. 13 at 10–11, 13. But it is apparent the ALJ was referring to documented symptoms and mental-status examinations from Matthews's treatment notes. *See* Tr. 34. And her full statement— that examination findings "overall" did not document "barriers to employment," *see* Tr. 34—implicitly recognizes some records showed more significant symptoms and findings than others.

13

Matthews cites reports of symptoms and examination findings the ALJ did not mention, which she argues undermine the ALJ's findings. Doc. 13 at 13–14. She points to records showing she complained, at various times, of tiredness and depression, visual and auditory hallucinations, self-isolation, anhedonia[9], low energy, paranoia, memory problems, and anger. Doc. 13 at 13–14 (citing Tr. 620, 766, 804, 807, 809, 962, 964, 1068, 1070, 1072, 1082, 1086, 1092). She also points to records showing examination findings of a sad or depressed mood; fair to poor level of functioning; only fair insight and judgment; slow motor activity; poor eye contact; and suicidal ideation. Doc. 13 at 13–14 (citing Tr. 620, 766, 804, 962, 1068, 1070, 1074, 1094).

That the ALJ did not discuss every treatment note does not warrant reversal and remand. An ALJ is required to consider all relevant record evidence in making a disability determination. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in h[er] decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation marks omitted). Here, that the ALJ described many of Matthews's treatment records—both positive and negative—suggests she considered the record as a whole and did not cherry-pick only records supporting her decision. Indeed, unmentioned by either the ALJ or Matthews are treatment records from February, March, May, July, and August 2012 showing improved symptoms, restful sleep, independent activities of daily living, good response to treatment, cooperation and engagement with counseling, euthymic mood, bright or cheerful affect, no delusions

---

[9]"Anhedonia" is the "[a]bsence of pleasure form the performance of acts that would ordinarily be pleasurable." STEDMAN'S MEDICAL DICTIONARY 85 (William R. Hensyl et al. eds., 25th ed. 1990).

or hallucinations, and a positive attitude. Tr. 1076–78, 1080, 1084–85, 1088–90. Those records further support the ALJ's findings.

Although the evidence Matthews cites could provide some support for the opinions of Drs. Anderton and Nay, it does not change that substantial evidence supports the ALJ's decision to reject those opinions as inconsistent with the weight of Matthews's treatment records. See *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the … factual findings, we must affirm if the decision reached is supported by substantial evidence."). Moreover, Matthews cites evidence from October 2012 and January 2013 indicating she was tearful, depressed, and experiencing renewed hallucinations and evidence from February 2013 showing suicidal ideation, but she fails to acknowledge (1) that she had reported increased depression in October 2012 and January 2013 due to her children both receiving long prison sentences and (2) that the examining assistant in February 2013 opined that Matthews's symptoms were worse "largely due to medication noncompliance." Tr. 1068, 1070–72.

Matthews also argues the ALJ erred in concluding the record did not support that the limitations contained in the opinions of Drs. Anderton and Nay would have "persisted for any consecutive twelve month period." Doc. 13 at 15. But records surrounding the evaluations by Drs. Anderton and Nay show Matthews improved after her August 2010 hospitalization (a few months after Dr. Anderton's June 2010 evaluation); "experienced a slight setback" in her treatment after her niece's death (just one day before Dr. Nay's evaluation); and ultimately recovered to the point of no longer needing therapy at some point before September 2011. Tr. 669–70, 766, 797, 807–08, 879–80, 964. That evidence supports the ALJ's finding that the limitations Drs. Anderton and Nay found did not persist for a consecutive 12-month period.

Because the ALJ articulated reasons amounting to good cause for giving "no significant weight" to the opinions of Drs. Anderton and Nay and substantial evidence supports those reasons, reversal and remand are unwarranted.

15

**Conclusion**

The Court **affirms** the Commissioner's decision denying Matthews's claims and directs the clerk to enter judgment in favor of the Commissioner and close the file.

**Ordered** in Jacksonville, Florida, on March 21, 2017.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   Counsel of record